UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HUSSEIN M. ABDULLA,

                               Plaintiff,

        v.                                                **DECISION AND ORDER**
                                                          05-CV-335S

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

        1.      Plaintiff Hussein M. Abdulla challenges an Administrative Law Judge's ("ALJ")

determination that he is not disabled as defined by the Social Security Act ("the Act").

Plaintiff alleges that he became disabled on February 28, 2002, due to back problems,

residuals of a stroke, and depression.  Plaintiff contends that his impairments have

rendered him unable to work since that date.  He therefore asserts that he is entitled to

payment of disability insurance benefits ("DIB") under the Act.

        2.      Plaintiff filed an application for DIB on March 13, 2003, which was denied.

Pursuant to Plaintiff's request, an administrative hearing was held before ALJ Arthur L.

Conover on September 16, 2004.  Plaintiff appeared at the hearing without counsel.  ALJ

Conover considered the case *de novo*, and on January 13, 2005, found that the Plaintiff

was not under a disability.  On March 11, 2005, the Appeals Council denied Plaintiff's

request for review.  Plaintiff filed the current civil action on May 12, 2005, challenging

Defendant's final decision.[1]

        3.      On January 13, 2006, the Government filed a Motion for Judgment on the

---

[1]The ALJ's January 13, 2005 decision became the Commissioner's final decision in this case
when the Appeals Council denied Plaintiff's request for review.

Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Plaintiff filed a Motion for Judgment on the Pleadings on March 15, 2006.  After full briefing, this Court reserved decision on the parties' Motions.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo*

review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.    This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.   If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.    While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national

3

economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff was engaged in substantial gainful activity at least through 2002, but not thereafter (R. at 12, 22);[2] (2) Plaintiff has a combination of medically determinable impairments, including chronic low back pain, residuals of a cerebral vascular accident, depression with paranoid thoughts, and opiate dependence; of which chronic low back pain and depression with paranoid thoughts constitute "severe" impairments when the impairments are considered separately (R. at 14, 23); (3) none of Plaintiff's impairments, alone or in combination, are attended with the clinical findings that meet or medically equal any impairment described in the listings (R. at 14, 23); (4) Plaintiff retained the physical residual functional capacity to perform medium level work and the mental residual functional capacity for work, except that, due to depressive symptoms and residuals of his stroke, he is limited to simple, unskilled, routine, repetitive work (R. at 14, 23); and (5) Plaintiff is unable to perform his past relevant work (R. at 21, 23).  Considering Plaintiff's status as a younger person who has progressed to a person "closely approaching advanced age," with a high school education, no transferable skills from his past work, and a physical residual functional capacity to perform medium work and certain exertional limitations, the ALJ determined, based on the Medical-Vocational Guidelines and the testimony of a vocational expert, that there are a significant number of jobs in the national economy that Plaintiff could perform.  (R. at 21-23).  Ultimately, the ALJ determined that

---

[2] Citations to the underlying administrative record are designated as "R."

Plaintiff was not under a disability, as defined by the Act, at any time through the date of his decision, January 13, 2005.  (R. at 22, 23).

10.     Plaintiff advances a number of challenges to the ALJ's decision.  First, Plaintiff argues that he was prejudiced by the lack of legal representation at his hearing before the ALJ.  This Court does not agree.  "Although a claimant for . . . disability benefits is entitled to be represented by counsel if he [or she] so desires, the Secretary is under no obligation to furnish such counsel."  Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980).  Where an ALJ adequately informs a claimant of his or her right to representation, and the claimant agrees to proceed without a lawyer, the claimant's *pro se* status at the administrative hearing, standing alone, is not a basis to reverse or remand the ALJ's decision.  See Rivera v. Chater, 942 F. Supp. 178, 182-83 (S.D.N.Y.1994).

Here, the record reflects that Plaintiff was advised of his right to have legal representation, and that he waived that right.  Specifically, Plaintiff's Notice of Hearing, which was sent to him approximately one month prior to his hearing, explicitly states "[i]f you want to have a representative, please get one right away."  (R. at 42).  Moreover, on the date of Plaintiff's hearing, the ALJ iterated to Plaintiff that he had a right to be represented.

ALJ:        I've indicated to you off the record, you have a right to be represented in this matter. [Attorneys] help explain Social Security law to you, help you gather medical records, and probably most importantly, cross examine expert witnesses such as [vocational expert] Mr. Phillips. He's here to tell me, based upon certain limitations, whether a person would be able to do jobs in the regional or national economy.  Okay?
CLMT:       Yeah.
ALJ:        Do you understand this process, and you want to go ahead and proceed?
CLMT:       Yes.

(R. at 388).   Under the circumstances, this Court finds that Plaintiff was adequately informed of his right to representation, and that his willingness to proceed without counsel constitutes a waiver of that right.

Notwithstanding his waiver, Plaintiff contends that the ALJ failed to get more detailed input from his treating psychiatrist, Dr. Alicia M. Saldana, to determine whether Plaintiff was in fact disabled.  "Where a claimant appears *pro se*, the Court must consider whether the ALJ fulfilled his duty to carefully probe and explore all of the relevant facts." Rivera, 942 F. Supp. at 183 (citing Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982).  Moreover, "[i]n a *pro se* case, the ALJ . . . has a heightened duty to affirmatively develop the record to ensure the claimant's rights are adequately protected."  Rivera, 942 F. Supp. at 183 (internal citations omitted).  Having reviewed the administrative record, this Court finds that the ALJ fulfilled all of his duties with respect to developing Plaintiff's medical history and considering all of the medical evidence, including Dr. Saldana's clinical findings.

As an initial matter, the ALJ alerted Plaintiff to gaps in the medical record at the time of his hearing that needed to be developed.  Specifically, the ALJ advised Plaintiff to submit records pertaining to his stroke treatment and to update his records from the Veteran's hospital where he was treated by Dr. Saldana.  (R. at 389).  Plaintiff apparently furnished these records, because voluminous medical exhibits relied upon by the ALJ appear in the administrative record, which were received subsequent to the hearing.  See Exhibits 11F & 12F.  (R. at 209, 281).

Moreover, this Court finds that when reviewed in their totality,  Dr. Saldana's clinical findings were not inadequate as Plaintiff contends.  The record shows that Dr. Saldana evaluated Plaintiff on numerous occasions.  On January 31, 2002, she diagnosed him with

psychosis and opiate dependency (Tylenol with codeine), and prescribed medication for him. (R. at 145). Thereafter, on May 2, 2002, Dr. Saldana determined that Plaintiff could undergo detoxification as an out patient. (R. at 147). On May 3, 2002, Dr. Saldana reported that Plaintiff wanted narcotics for his pain, but when the treatment team refused to prescribe any medications, he refused to stay. (R. at 142). According to Dr. Saldana, Plaintiff had no psychotic symptoms and no immediate lethality, but that he was unmotivated for detoxification and rehabilitation. (R. at 142). Dr. Saldana concluded that Plaintiff was in stable condition when discharged, but exhibited poor insight. (R. at 142). She further reported that Plaintiff exhibited identical behavior on May 4 and May 5, 2002, leaving the hospital after staff refused to prescribe medication. (R. at 252). On both occasions, Dr. Saldana concluded that Plaintiff had no psychotic symptoms, no immediate lethality, and was in stable condition at the time he was discharged. (R. at 252).

On August 1, 2002, Dr. Saldana noted:

> Mr. Abdulla came in and reports that he is not using [T]ylenol with codeine for the last 3 months since he left the hospital. He states that he is still hav[ing] the bad thoughts, paranoid thoughts about his family[,] but they don't bother him so much. He has pain but he can tolerate [it] . . . . He has no psychosis, no immediate lethality.

(R. at 237). On September 25, 2002, Dr. Saldana indicated that Plaintiff reported that he had not used codeine in four months, was less paranoid and less depressed. (R. at 234). She opined that Plaintiff had no immediate lethality. (R. at 234). Dr. Saldana reported on April 18, 2003, that Plaintiff denied thoughts of hurting himself or others, and denied using codeine. (R. at 220). Thereafter, on July 16, 2002, Dr. Saldana reported that Plaintiff was less depressed, had no acute psychotic symptoms, and no immediate lethality. (R. at 219).

On September 9, 2004, Dr. Saldana reported that Plaintiff had hired a lawyer to help

7

him with SSD and was told by the lawyer to request a letter saying that he was unemployable.  (R. at 209).  However, she indicated that at that time, Plaintiff had no psychosis, no immediate lethality, and denied using codeine.  (R. at 209).  Finally, in a letter dated September 3, 2004, Dr. Saldana indicated that Plaintiff had been treated at the Behavioral Health Clinic for opiate dependence, depression, and paranoid thoughts since 2002.  (R. at 208).  Dr. Saldana further noted that "[Plaintiff] reports that he is not able to work and is now seeking SSD."  (R. at 208).  In the letter, Dr. Saldana did not state her opinion as to whether Plaintiff was able or unable to work.

Contrary to Plaintiff's argument, Dr. Saldana's treatment record is not "inadequate" simply because she did not render an opinion regarding Plaintiff's capacity for work.  It is well established that the determination of whether a claimant is disabled is reserved to the Commissioner, not a treating physician.  See 20 C.F.R. § 404.1527.  This Court finds that Dr. Saldana's progress notes contain specific clinical findings that were sufficient to support a disability determination, and that further development of the record was unnecessary. Moreover, it is unlikely that a request for further information would have been beneficial to Plaintiff's case.  As reflected in her September 3, 2004 letter, Dr. Saldana declined to endorse a finding that Plaintiff was disabled by his mental impairments, despite his explicit request for her to do so.  Based on the foregoing, this Court finds that Plaintiff was not prejudiced by his lack of representation at the administrative hearing.

11.     Plaintiff's second argument is that the ALJ improperly dismissed the findings of two non-treating mental health professionals, Dr. Hilary Tzezto, a psychiatrist, and Rene Baskin-Creel, Ph.D., a licensed psychologist.  However, Dr. Tzezto did not make any findings with respect to Plaintiff's impairments because there was insufficient evidence. (R. at 186).  Accordingly, there were no findings for the ALJ to accept or reject.  Dr. Baskin-Creel opined that Plaintiff might have difficulty maintaining attention and concentration, that

his memory skills were impaired, and that he would have difficulty dealing with stress. (R. at 180). The ALJ determined that Dr. Baskin-Creel's opinions were not fully supported by her own clinical findings. (R. at 19). For example, Dr. Baskin-Creel observed that claimant's attention and concentration were intact during the mental status exam, and that he was able to do counting and simple calculations. (R. at 19, 179). Moreover, after opining that Plaintiff's memory skills were "definitely impaired," she qualified her conclusion, stating that the "problem" could have been caused by a language barrier or anxiety. (R. at 19, 179). Moreover, Dr. Baskin-Creel's consultative exam yielded numerous positive findings that were fundamentally inconsistent with the conclusion that Plaintiff was mentally disabled. For example, Dr. Baskin-Creel found that Plaintiff exhibited a euthymic mood, a full range of affect, no psychomotor behavior, normal speech, and coherent and goal directed thought processes with no evidence of hallucinations, or delusions of paranoia in the evaluation setting. (R. at 20, 178-79).

It is well settled that an ALJ is entitled to rely upon the opinions of the state agency's medical and psychological consultants, since they are qualified experts in the field of Social Security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2). At the same time, an opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is supported by such findings, see 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3), and the less consistent an opinion is with the record as a whole, the less weight it is to be given. See 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). This Court finds that the ALJ properly disregarded those aspects of Dr. Baskin-Creel's evaluation that were contrary to her own clinical findings and with Plaintiff's medical record as a whole, which reflected significant mental improvement after August 2002.

12.    Plaintiff's third argument is that the ALJ's finding that he performed

substantial gainful activity from February 20, 2002, through December 31, 2002, is not supported by substantial evidence.  The record reflects that even after his alleged onset date of disability in February 2002, Plaintiff continued to manage his grocery store, and did not sell the business until sometime in 2003.  (R. at 12, 393).  In concluding that Plaintiff performed substantial gainful activity during the relevant period, the ALJ reasoned that by his own report, Plaintiff managed the store operations, hired employees, and dealt with the customary duties of a store owner and operator, such as cashiering, stocking and maintaining inventory.  (R. at 13).  Plaintiff did not hire a manager or delegate his managerial duties to another employee, worked full time, and reported an income of $9,766.00 from self-employment.  (R. at 13).  These are appropriate considerations to determine whether a self employed person has engaged in substantial gainful activity under the regulations promulgated by the Social Security Administration.  See 20 C.F.R. § 404.1575.  Based on the foregoing, this Court finds that the ALJ's determination that Plaintiff was engaged in substantial gainful activity during this period is supported by substantial evidence.

13.     Finally, Plaintiff argues that the ALJ should have considered whether he was disabled by a mental impairment during a closed period from February 28, 2002, through March 1, 2003.  However, as previously discussed, the ALJ found that from February though December 2002, Plaintiff was not disabled because he engaged in substantial gainful activity.  (R. at 22).  Under the regulations, where an individual is actually engaged in substantial gainful activity, the ALJ shall find that the individual is not under a disability regardless of his or her medical condition, age, education or work history.  See 20 C.F.R. § 404.1520(b).  Even assuming that Plaintiff's mental condition deteriorated during the remaining time period from January 2003 through March 1, 2003, he would not meet the

12 month durational requirement for a finding of disability.  See 20 C.F.R. § 404.1509 (stating that "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months").  Accordingly, the ALJ's determination that Plaintiff was not mentally disabled during this time frame is supported by substantial evidence.

14.    After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's determinations in this case.  Moreover, the ALJ clearly advised Plaintiff of his right to counsel, thoroughly developed and examined the record, and afforded appropriate weight to the opinions rendered by non-treating sources. Finding no reversible error and further finding that substantial evidence supports the ALJ's decision, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:   September 27, 2006
         Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge